ALBANY,
Dec. 1825.

Flower
v.
Allen.

ROSWELL FLOWER, LEVI JOHNSON, GROVE MOORE, THO
MAS SHELDEN and SILAS HARWOOD, plaintiffs in error,
*against*
ABRAM ALLEN and ARCHIBALD M'ALLISTER, defendants
in error.

On appeal under the late act, (sess. 41, ch 94,) it was not error for the com-
mon pleas to try without a jury, when none was demanded by either
party.

Overseers of the poor are not liable for medical or other services rendered
to a pauper, without their request, or express promise to pay.

These officers have no right to appropriate the monies of their town, in any
case, without the previous order of a justice of the peace.

Upon error brought, and the judgment of the Court below being reversed,
for a defect of form, as the want of a venire, the merits being with the
defendant in error, the proper course is to award a venire to the Court
below, that the cause may be tried in due form, and a verdict and judgment
rendered accordingly.

Whether overseers of the poor are ever liable in their corporate capacity?
Quere. Per Spencer, Senator.

And, per Tallmadge, President, they are.

Whether the select men of another state are liable to an action here for
neglect of official duty? Quere. Per Spencer, Senator.

And, per Tallmadge, President, they are not.

A pauper may, under certain circumstances, sue the overseers of the poor,
for a total neglect of duty; but third persons, not interested, cannot do
this. Per Spencer, Senator.

The Court of Errors may reverse a judgment of the Supreme Court in part
and affirm it in part.

Overseers of the poor are liable, sometimes in their corporate, and sometimes
in a personal capacity. In the former cases, their persons or property are
not affected by the judgment; but only the corporate property. Other-
wise, where they are liable personally. Per Tallmadge, President.

ON error to the Supreme Court. This cause began in a
justice's Court, of Washington County; in which the defen-
dants in error sued the plaintiffs in error, for care, medi-
cine, attendance, services rendered, &c. as surgeons and
physicians, done and performed for one Wilkins, a pauper,
in 1817, in the town of Rupert, in the state of Vermont the
plaintiffs in error then being select men of that town, and
by virtue of that office, overseers of the poor; which ser-
vices, &c. as the plaintiffs before the justice alleged, were

done at the request of the defendants, and for which, they promised payment, &c. to the damage of the plaintiffs of $50, &c. Plea, the general issue. The cause was tried before the justice, without a jury, May 22d, 1820 ; and a judgment rendered for the plaintiffs below, for $52 98, damages and costs. From this judgment, the present plaintiffs in error appealed to the Court of Common Pleas of the county of Washington ; where the cause was tried at December term, 1820 ; and that court reversed the judgment of the justice. From this reversal, the present defendants in error brought error to the Supreme Court. With this writ, the Common Pleas returned a record, with a *placita*, in May term, of the C. P. 1820, &c. and after setting forth the return of the justice, it then stated an issue in the usual form of an assignment of errors, by the present plaintiffs in error and a joinder in error by the other side ; continuances by *curia advisare vult*. And at December term, 1820, a judgment of reversal by the C. P. in the usual style of a court of error; which was stated to be upon the examination, by the court, of the witnesses named in the justice's return, &c. mature deliberation, &c. omitting all mention of any jury ; and without any continuance by *vicecomes non misit breve*.

They also returned a bill of exceptions taken before them, on the hearing of the cause, by the present defendants in error.

By this, it appeared, that on the hearing, evidence was given, that in 1817, the plaintiffs in error, being selectmen and overseers of the poor of the town of Rupert, as stated in the declaration, the defendants in error, in the same year, being surgeons and physicians in the town of Salem, Washington county, performed the services, compensation for which was claimed. That these services, were the amputation of Wilkins' leg, who was a pauper, in Rupert ; and the operation was necessary to save his life. It did not appear that Wilkins had any settlement in Rupert ; but a justice of the peace had, previous to the amputation, by order, made an appropriation of $20, which had been applied in procuring medical care of the pauper, who resided in Rupert ; $12, part of it, being paid to the defendants in error, towards

their services, and receipted by them in part payment· That they refused to receipt their demand in full ; and this was all the plaintiffs in error were authorized by the town to pay them. That eight or ten days before the amputation, a complaint in writing was made to one of the plaintiffs in error, stating Wilkins' situation, &c. upon which the order for relief was made. But the defendants in error were called to Wilkins by his father; and there was no evidence that the plaintiffs in error had requested the services of the defendants in error ; or ever expressly promised to pay for them.

At august term, 1824, the Supreme Court reversed the judgment of the Common Pleas, generally, with costs ; and did not direct a *venire de novo* to issue.

*J. Crary*, for the plaintiffs in error. 1. The judgment of the Common Pleas should not have been reversed by the Supreme Court for error in the record. The statute (sess. 41, ch. 94,) gave the Common Pleas jurisdiction of the cause. This includes the power of deciding it. The manner is merely incidental. Judgment may be given on demurrer, by default, on confession, or the cause may be decided by the court on the facts, with the consent of the parties, and without a jury.

2. There is nothing in the nature and duty of the office of overseers of the poor, which renders them liable to an action for services rendered to paupers, without their request or express promise ; and neither of these were proved in the court below. At common law, the poor depended for support upon the charity of private individuals. (1 Bl. Com. 359.) But if the defendants in error are allowed a resort to the Statutes of Vermont, these will not aid them. As to the support of the poor, they will be found the same as our own ; according to which the overseers of the poor have not in themselves the power to appropriate the public monies to the support of paupers. In the present case, there is proof that they had exhausted the means conferred on them by the town. The $12 was all they could control. This has been paid to the defendants in error. The law will not imply a promise from the facts in this case. The office of overseer

is created, and the duties prescribed by statute, and the plaintiffs in error have not been proved liable within its provisions.

*S. Stevens*, for the defendants in error. 1. The Supreme Court were right in reversing the proceedings of the Common Pleas for error in their proceedings. They should have tried the cause by a jury, upon a proper issue of fact. The cause should have been continued by *vicecomes non misit breve*, (1 Duul. Pr. 594; Gilb. C. P. 79, 83;) not, as here, by *curia advisare vult.* The Common Pleas erected themselves into a court of error; and proceeded upon an assignment of errors and joinder to a judgment of reversal; whereas they should have tried the cause *de novo*, upon the issue joined before the justice. (*Cowen* v. *Bush*, 3 Cowen's Rep. 343. *Breese* v. *Thompson*, 20 John. 280.) If this court sustain such a judgment as that of the Common Pleas, there is an end of all form. A party may make up any thing and call it a record.

2. The plaintiffs in error, as overseers of Rupert, being bound to provide for Wilkins, the pauper; and the services of the defendants in error being rendered in a case of urgent necessity, with the knowledge of the plaintiffs in error, they are liable without any express promise. The law raises a promise. (*Simmons* v. *Wilmot*, 3 Esp. Rep. 91. *Wennall* v. *Adney*, 3 B. & P. 247, 253. *Lamb* v. *Bunce*, 4 M. & S. 275.)

The plaintiffs in error were liable personally for a neglect of their duty as overseers.

*Crary*, in reply. As to the formal objection; it was held by the late Supreme Court that the issue in the Common Pleas, must, under the act in question, have been the same as before the justice. (*Rawson* v. *Adaws*, 17 John. 132.) The Common Pleas were to proceed as the very right of the case should appear, upon the same issue, and the same witnesses with those before the justice. (id. *M'Chesney* v, *Lansing* 18 John. 388.) Now, it is optional with a party. whether his cause shall be tried by a justice or by a jury Neither party demanded a jury before the justice. The

Flower
v.
Allen

Common Pleas come in the place of the justice; and no venire is demanded there.

Whose business was it to issue the venire? Not ours, but the appellees, the plaintiffs in the Common Pleas. Then it does not lie ·with them to come and object to this irregularity of their own. They went on and took a bill of exceptions. This step was a waiver of the irregularity. (John. Dig. Practice, XXXVIII, and the cases there cited.) Nor was it competent for the party to object in the Supreme Court for the first time. He should have done so in the Common Pleas; where the difficulty might have been obviated, in the first instance; or a *venire de novo* have been issued. (*Beekman* v. *Frost*, 18 John. 544, 58.)

There was no need of any issue in the Court of Common Pleas. The cause stood ready for trial upon the issue re turned by the Justice; and the new one of *in nullo est er-ratum*, may be directed as surplusage.

As to the merits; the English cases do not apply to this state or Vermont. The English statutes, concerning casual poor, are different both from ours and those of Vermont. That these overseers would not be liable, upon the case made out, in this state is well settled. (*Everts* v. *Adams*, 12 John. 352. *Hull* v. *Supervisors of Oneida*, 19 John. 259, 260.) They cannot be compelled to pay beyond the funds provided by law. (*Bartlet* v. *Crozier*, 17 John. 439.)

Nor has the rule contended for upon the other side, passed without question, even in England. (*Atkins* v. *Barn-well*, 2 East, 505–6.) *Everts* v. *Adams* adopts the princi ple of this case; and *Olney* v. *Wicks*, (18 John. 122,) goes further. It holds that an overseer is not liable even on an express request. *The Overseers of Pittstown* v. *The Overseers of Plattsburgh*, (18 John. 407, 418,) held that overseers might be sued as a corporation; but that was upon a point of non-feasance.

SANFORD, Chancellor, in delivering his opinion, after stating the case, spoke nearly as follows:

1. Were the Court of Common Pleas right in proceeding to try the cause without a jury?

ALBANY,
Dec. 1825.

· Flower
v.
Allen.

It will be recollected that this appeal was made under the act of 1818, (sess. 41, ch. 94.) A trial by jury was not demanded, either before the Justice, or the Court of Common Pleas ; and the statute in question did not, in terms, require the court to proceed by jury. Before the justice, no jury was necessary without a demand of one ; and if the Court of Common Pleas are to be considered as taking the place of the Justice, in this respect, (and I should say the good sense of the statute would not require more of them,) the party cannot complain that the cause proceeded without a jury, till he shows us that he required one.

But there is another answer to the question. By the 19th section, when the Court of Common Pleas become possessed of the cause, they were required to proceed and give judgment, according as the very right of the case should appear ; without regard to the previous trial. I cannot but think that the object of this provision was, to put the Court of Common Pleas, as near as might be, in the place where the Supreme Court formerly stood, under the old system of proceeding by certiorari ; in relation to a decision upon which, it is remarkable, that the same words were used by the statute. (Sess. 36, ch. 53, s. 17, 1 R. L. 397.) At any rate, I do not believe the legislature ever intended that the party should have an absolute right to a trial by jury, without demand. It is highly probable, that the Supreme Court reversed the judgment of the Court of Common Pleas, upon the ground that there was no jury ; for I perceive that, in a previous case, (*Breese* v. *Thompson*, 20 John. 280,) they asserted that all issues of fact should be tried, on appeal, by a jury. To this doctrine, I cannot assent. There is nothing to warrant it in the words of the statute under which the Court of Common Pleas acted ; and if there be such a doctrine, it must arise from inference. I cannot but think that the omission to require a jury expressly, was intentional ; and this is rendered the more probable, from the circumstance, that the act of 1824, now in force, upon the same subject, (sess. 47, ch. 238, s. 38,) does, in its terms, require a jury. If, therefore, the Supreme Court reversed the judgment

On appeal to
the C. P. un-
der the stat.
(sess. 41, ch.
94,) it was not
erroneous    to
try the cause
without a jury,
especially
where a trial
by jury was
not demanded
by either par-
ty.

ALBANY,
Dec. 1825.

Flower
v.
Allen.

An overseer of the poor cannot appropriate money without the order of a justice; and is not liable for medical services rendered to a pauper without request of the overseer, or his express promise to pay.

of the Court of Common Pleas on the ground of a forma. defect in their proceedings, my opinion is that they erred.

2. As to the merits. The declaration avers a promise to pay : but the evidence, as detailed in the bill of exceptions is far from making it out. It does not appear that the plaintiffs in error ever retained the defendants in error to do the services which were the subject of the suit. If there be any promise in the case, it must have been implied by law. If we are permitted to look into the printed statutes of Vermont, (which, by the by, were not in evidence,) it will be perceived that they do not vary materially from our own ; according to which, the overseer of the poor is controlled in every appropriation of the public money by the order of a justice. In the case before us, an inquiry took place ; provision was made for raising twenty dollars which had been appropriated before the suit was brought. Here was a compliance with all that the law required of the plaintiffs in error. This was not enough, it seems, to pay off the physicians ; but I can see no legal obligation on the overseers of the poor to pay any more. That a sufficiency was not provided, was not their fault. They were bound to lay open the circumstances to the magistrate ; and abide his decision upon the case.

It follows, that the judgment should be reversed.

If the judgment of a court be reversed, on error, for a formal defect, the merits being with the defendant in error, a venire should go.

3. Suppose the Supreme Court were right in reversing upon the objection of form ; it did not follow that a general judgment of reversal should be given ; and that this should end the matter. By reversing the judgment of the Court of Common Pleas, generally, they restored that of the justice, which went to charge the plaintiffs in error personally. This consequence would not legally follow the error of the Common Pleas in mere matter of form. The proper course in such cases is, to follow up the reversal with the award of a venire ; that all may be set right by a new trial in proper form.

My opinion is, that the judgment of the Supreme Court should be wholly reversed, on the ground that the judgment of the Court of Common Pleas was right both in form and substance ; but should this court hold the latter only, then I

am for awarding a venire to the Court of Common Pleas, to the end that the plaintiffs in error may protect themselves by a valid trial, verdict and judgment in their favor.

COLDEN, Senator. The liability of the plaintiffs in error must be determined by ascertaining what are the duties of the selectmen of the towns in Vermont, under the laws of that state : to which I have not had access.

I shall take for granted that they are, as has been stated by counsel on the argument, and now by his honor the Chancellor, the same as are prescribed for overseers, by our statute for the relief and settlement of the poor. If they be so, I am of opinion that the plaintiffs in the justice's court had no right to recover against the defendants. My reasons in support of this opinion, I have already assigned in the case of Gourley & Wood against the same defendants in error.

But, in this case, there are circumstances which render it, in my opinion, stronger against the defendants in error than that case. Here was no sudden emergency; the pauper had no settlement in Rupert; twenty dollars were actually raised and appropriated by legal authority to the payment of physician's bills; and a portion of that sum was paid to the defendants in error, &c.

The present case stronger for the plaintiffs in error than the next preceding one.

The plaintiffs in error having faithfully applied all the money that was allowed by the town, to the relief of the pauper, I think they very properly insisted that they were not liable any further. It would, in my opinion, be the height of injustice to oblige them to pay any thing beyond what they were by law allowed to expend. Whatever should be levied against them, upon an execution in this suit, must be paid out of their private property, without its being in their power to compel either the town or any person to reimburse them.

Were we to permit recoveries under such circumstances, all the precautions of the law to prevent unauthorized expenditures for the relief of the poor would be frustrated. Every person might relieve a pauper, when he pleased, and as he pleased ; and make the overseers of the town,

where the pauper happened to be found, without any regard to his place of settlement, liable for services, or for what articles might be furnished. It would be better to repeal our existing law at once, and to declare that any doctor who got a pauper into his hands should, as to that pauper, be justice of the peace, and overseer of the poor; and should have a right to levy his bill on the inhabitants of the town.

I am persuaded that the defendants in error ought not to have prevailed in the suit before the justice; and I am therefore of opinion that the judgment of the Supreme Court should be reversed.

I have not examined the question raised upon the form of proceeding in the court of Common Pleas; but am convinced, from the reasoning of his honor the Chancellor, that, at least, the defendants in error could not object to this, in the Supreme Court, after having stood by, and silently acquiesced, in the Common Pleas.

BURT, CLARK, DUDLEY, ELLSWORTH, GARDINER, HAIGHT, LAKE, LEFFERTS, LYNDE, M'INTYRE, M'MICHAEL and WOOSTER, Senators, also concurred with the Chancellor.

Case stated.    SPENCER, Senator. Upon the merits of this case, there can be little difficulty. The plaintiffs in error, (defendants below,) as overseers of the poor of the town of Rupert, in Vermont, were prosecuted for the amount of a bill for medical services, rendered in that state, to a pauper who was not settled in that town, without any request by the defendants below, and who never made any promise to pay.

The question upon the merits.    It is contended that the defendants below were liable at common law, as public officers, to provide for casual poor; and the service having been rendered, they ought to remunerate the plaintiffs below for it, and some cases have been cited, to show that such is the common law. The case of *Simmons* v. *Wilmot*, (3 Esp. Rep. 91,) was an action against

English cases. church wardens and overseers of the poor for medicine and attendance, &c., furnished a pauper upon an emergency occasioned by a sudden accident. Lord Eldon, before whom the cause was tried, observed that the case was new to him; but held that parish officers were bound to take care of cas-

ual poor ; and if a common person took care of the pauper, on the liability of the parish officers, that he had a right to recover. What become of the cause, does not appear. Much weight certainly ought not to be given to a *nisi prius* opinion, expressed as this was, with hesitation, upon a question which must be of every day's occurrence in England ; and which was unsupported by any adjudged case upon the point.

In *Wennall* v. *Adney*, (3 B. & P. 253,) referred to by counsel, the action was against the master for medical services rendered to his servant, also upon an emergency occasioned by an accident. The Court held the action would not lie ; and Lord Alvanley, Chief Justice, says, " I have no doubt whatever that parish officers are bound to assist when such accidents as these take place, and that the law will so far raise an implied contract against them, as to enable any person who affords that immediate assistance which the necessity of the case usually requires, to recover against them the amount of money expended." There the rule is confined to cases of necessity.

In the case of *Lamb* v. *Bunce*, (4 M. & S. 275,) also referred to by counsel, an action was brought for a surgeon's bill against the overseer of a parish, and Lord Ellenborough, C. J. held that, where " there is not time for procuring an order of justices, the law raises an obligation against the parish where the pauper lies sick as casual poor, to look to the supply of his necessities ; and if a parish officer stands by and sees that obligation performed, by those who are fit and competent to perform it, and does not object, the law will raise a promise on his part to pay for the performance." The defendant was held liable in that case, on the ground of an implied promise arising from the circumstances.

In *Watson* v. *Turner*, (Bull N. P. 147,) which was not cited on the argument, where a pauper was suddenly taken ill, and an apothecary attended her without the previous request of the overseers, and afterwards they promised payment, it was holden good ; for they were under a moral obligation to provide for the poor.

From these cases, I extract the following principles : **1.** That overseers of the poor are bound to provide for casual

Flower
v.
Allen.

poor; 2. That as they have the duty to perform, they have a right to exercise their discretion as to the persons to be employed, the terms, time and extent of relief; 3. That if the emergency be such as not to allow time for an application to them, or for an order of justices, any person may afford such relief as the necessity of the case requires, and look to those officers for remuneration; and 4. That if there be an express promise to pay, or one may be implied from the circumstances they will be liable.

The case of *Atkins* v. *Banwell*, (2 East, 505,) is directly contrary to the third of these principles; for in that case it was decided by Lord Ellenborough, J. Le Blanc, J. and the whole Court, that the law will not raise an implied promise in parish officers, to pay for necessary medical attendance on a pauper suddenly attacked with a dangerous illness, which prevented his being removed to the place of his settlement; where there were no circumstances from which to infer a promise. And Lord Ellenborough uses this very strong language: "There is no precedent, principle or color for maintaining this action."

New York
cases.

This case is referred to by the Supreme Court in *Everts* v. *Adams*, (12 John. 352,) and its principle recognized. The Court there say, " there is, therefore, no obligation to pay, (there being no request or promise by the defendant,) unless it be implied by law, and the law will create no such liability."

Nor does the case of *King* v. *Butler*, (15 John. 281,) in the least infringe upon this principle. There, the overseer expressly directed the attendance, and promised to pay for it; and the Court very properly held that it was his business to see that he was duly authorized.

Overseers of
the poor are
not, on any
emergency lia-
ble for services
rendered to a
pauper without
their request, or
an express pro-
mise to pay,
unless upon the
order of a jus-
tice.

So the case of *Todd & M'Cord* v. *Birdsall*,, (1 Cowen, 260,) proceeds upon the fact of a written order by the overseer, for the payment of money to a pauper.

It will be seen from this review, that it is, at least, very doubtful whether, in England, parish officers are in any event, or in any emergency, liable for supplies furnished to a pauper without ther request, and without any subsequent promise to pay; and that, in this state, the law has uniform

ry been held to be, that overseers of the poor are not liable in such a case. This presents a formidable obstacle to any recovery by the defendants in error.

But admitting the law to be as contended to the whole extent of the authorities cited in the English courts, this case does not come up to them. Here was no exercise of the discretion of the overseers, although there was abundant opportunity for it, as to the persons to be employed, the terms or the extent of the relief. It was not a case of emergency; another physician had been employed sometime before; and eight or ten days before the services were rendered by the defendants in error, a complaint was made to the select men, the plaintiffs in error; and an order was made for a specifie sum to be applied to the relief of the pauper. Under these circumstances, the defendants in error were volunteers, and had not the shadow of a claim against the overseers, whose consent was never solicited, although there was abundant time for it.

There are various other questions founded on the merits, which would be interesting; but which it is not necessary to decide. Thus, whether overseers are liable in any event, or under any circumstances, to an action against them in their official character, is a point which will deserve the serious consideration of this court, whenever it becomes necessary to determine it. And if it should be held, that the overseers of the poor in this state are so far to be regarded as a corporation, as to be liable to an action, another and still more difficult question is, whether the select men of another state are to be thus regarded? And whether it would be consistent with the general principles of the law of nations, and with those peculiar principles which regulate the confederacy of the United States, for the courts of New York to entertain jurisdiction of an action against the public officers of another state in their official character, for services rendered in that state, and tne remuneration for which, depends, upon the laws of that state. The view which I have taken of this cause, avoids all these questions, and enables me to dispose of it on the gratuitous concession, that an action would lie against them.

ALBANY,
Dec. 1825.

Flower
v.
Allen.

Whether they are ever liable in their official or corporate capacity; especially those of another state.

It was was remarked by the counsel for the defendants in error, that the select men were not sued *officially*, but personally, for a neglect of official duty. Granting that public officers may be thus prosecuted, the much more difficult question is again presented, whether the courts of one state will entertain suits for the official misconduct of officers of another state? If such action could be maintained, it must certainly be brought by the party grieved by such misconduct. If the overseers had wholly neglected their duty, in providing for the pauper, I have no doubt he might, under circumstances, maintain an action for the injury sustained by such neglect. But this would give no right to third persons, to prosecute. The physicians in this case cannot say that the select men have neglected their duty, in omitting to pay them for their services, until they establish that it was their duty, and that they had the means of doing it. But if the view taken be correct, it was not their duty to pay the defendants in error ; there was no legal obligation on the town or its officers ; and so far from the select men having the means to pay, it appears expressly from the case, that they had expended the sum allowed for this purpose.

A pauper may, under circumstances, sue overseers for a total neglect of duty ; otherwise of third persons.

Upon the merits of this cause, then I apprehend there can be no difficulty in determining that the physicians, the defendants in error, had no cause of action whatever, against the plaintiffs in error.

As to the form of the proceedings.

The justice before whom the action was brought, rendered judgment in favor of the physicians, for fifty dollars. On an appeal to the Court of Common Pleas of Washington county, that court reversed the judgment of the justice. So far as the merits of a cause are concerned, that reversal was correct. But in that proceeding it is alleged, the Court of Common Pleas committed an error in trying the cause, without the intervention of a jury ; and for that error, the judgment rendered was reversed by the Supreme Court, and the plaintiffs before the justice were restored to all things they had lost.

In my opinion, the Supreme Court was correct in reversing the judgment of the Common Pleas. The Court of Common Pleas seem to have considered the proceeding be-

fore them in the same light as one upon *certiorari*, and to have *reversed* the judgment as if it were before them by writ of error. This appears to me entirely erroneous. The appeal to the Common Pleas, is a proceeding unknown to the common law. It opens the whole case, and presents it for a new trial upon the examination of witnesses, in open court, and a new judgment must be rendered ; whereas, the writ of certiorari brings up the history of the proceedings, before the justice ; and for errors in those proceedings, the judgment is reversed, or if they are correct, it is affirmed. The writ of certiorari is thus, in effect, a writ of error. No two things, it appears to me, can be more dissimilar than the remedy by appeal, and that by certiorari. In the one case, there is a new trial ; and in the other there is no trial whatever. The practice of the Supreme Court on *certiorari* therefore, furnishes no analogy for proceedings on appeal.

The Court of Common Pleas, being required to proceed and try the cause, it must do so according to the course of the common law. The constitution(*a*) provides that trial by jury as it hath heretofore been used in the colony of New York, shall remain inviolate forever. This provision was in force at the time this cause was heard in the Common Pleas of Washington county. The trial by jury had always been preserved in the colony and state, where the demand exceeded twenty-five dollars ; and it would have been unconstitutional for the legislature to have authorized the trial of an issue of fact in any other way. The legislature has not done so. I agree with the Supreme Court in the case cited by the counsel on the argument, from 20 John. 280, that it is fairly to be inferred from the act of 1818, authorizing appeals, that the courts of Common Pleas are to proceed on them in the same manner as if the cause had been originally instituted in those courts. But admitting that the statute does not explicitly point out the mode of trial, the constitution did ; and I cannot indulge any refined reasoning from analogy, to abridge the right of trial by jury in any case ; and much less where it is positively enjoined by the constitution. I cannot entertain a doubt, therefore,

(*a*) Old Con.
art. 41.

ALBANY,
Dec. 1825.

Flower
v.
Allen.

Where a
judgment is re-
versed for
form, the merits
being with the
defendant in
error, a ve-
nire should be
awarded.

that the proceedings of the Common Pleas, in *reversing* the judgment of the justice, as if it were before th at Court by writ of error, were erroneous, and that they were unconstitutional in determining the cause without a trial by jury.

But it would be a lamentable consequence, and an aspersion on the administration of justice, that the reversal of the judgment of the Common Pleas, for such errors in its proceedings, should have the effect of confirming the original judgment of the justice. Yet such is the effect of the judgment of the Supreme Court; and if it should be affirmed by this court wholly, the original plaintiffs would recover their demand; not on account of its justice, but because the Court of Common Pleas committed an error in the mode which it adopted of revising the judgment of the justice; and because that court had, in truth, never legally tried the cause. Yet the judgment of the Supreme Court is correct, in reversing that of the Common Pleas. In this dilemma, there was a course which would have removed all difficulties, which was within the power of the Supreme Court, and which would undoubtedly have been adopted, if requested by the counsel for the present plaintiffs in error. It was to direct the Court of Common Pleas to issue a venire, and proceed to the trial of the cause according to law, or to have awarded a venire out of the Supreme Court.

When a
judgment is re-
versed upon
some point not
involving the
merits, a venire
*de novo* is
granted, of
course, to try
those merits.

The cases of *Grant* v. *Astle*, (Doug. 722,) *Harwood* v. *Goodright*, (Cowp. 89,) *Davies* v. *Pierce*, (2 T. R. 125,) *Brown* v. *Clarke*, (3 John. 443,) and *Arnold* v. *Crane*, (8 id. 79, 82,) establish beyond all question, that whenever a judgment is reversed upon some ground which does not involve the merits of the cause, a venire *de novo* is awarded, of course to try those merits. It appears from the report of the case of *Livingston* v. *Rogers*, (1 Caines, 587,) that this court on reversing a judgment of the Supreme Court, in that cause, ordered a venire *de novo*, to be issued by the Supreme Court. The correctness of this practice is vindicated by Kent, J. and abundantly sustained by the authorities cited by him.

Nor can there be any doubt, of the authority of this court to reverse in part, and affirm in part. (Str. 188. Ld. Raym. 894, 1534.) And as that is the only possible mode, by which justice in this case can be attained, and a trial had according to law, I am of opinion, that so much of the judgment of the Supreme Court, as reverses the judgment of the Court of Common Pleas of Washington county, be affirmed; that the residue of the judgment in the Supreme Court be reversed; that the record be remitted to the Supreme Court, with directions, either to issue a venire and try the cause in that Court, or to remit the record to the Court of Common Pleas of Washington county, with similar directions to issue a venire and proceed to the trial of the appeal; and that neither party be entitled to any costs upon the writ of error. (*Cole* v. *Wendall*, 8 *John.* 116.)

*Bowman, Earll, Greenly, Keyes, Ogden, Redfield, Thorn, Wilkeson* and *Wright*, Senators, concurred with *Spencer*, Senator.

*Tallmadge*, President, said his opinion accorded with that of the Chancellor, and of Colden, Senator, that the judgment of the Supreme Court should be reversed upon the merits. There was no sufficient promise to sustain the action. According to the laws of Vermont, there was no omission of official duty, and no cause of action on this ground. But I would not put the decision on the latter point; because it would imply the right of the courts of this state to inquire into the official conduct of the officers of another state. This court cannot entertain the question. It is within the reason of the cases which hold that the courts of one state cannot enforce the penal or local laws of another. The performance of official duties imposed by the laws upon the officers of another state cannot be enforced, or the omission punished, by the laws of this state; though it is otherwise as to contracts made in other states. The action can be sustained on the ground of contract only; and in this respect the proof is deficient.

Vol. V.                               85

---

*Margin notes:*

ALBANY, Dec. 1825.

Flower v. Allen.

Court of errors may reverse in part and affirm in part, on writ of error.

Our courts cannot inquire into the official conduct of officers of another state.

Flower
v.
Allen.

Overssers of
the poor are
liable some-
times as cor-
porations ; and
sometimes
personally.

In the for
mer case, they
are not bound
in person or
property ; but
the judgment
affects the
corporation
only.

Overseers of the poor must be proceeded against like officers of other incorporations. They must be made liable in their official or corporate capacity, or be charged as individuals. The action must be shaped accordingly, and be supported by sufficient proof. For official neglect or misconduct, they may be indicted ; but they can never be prosecuted for official liabilities, and be rendered individually responsible for the judgment, in their property and persons. This distinction between individual and official liability must be regarded ; and will regulate the form of the proceedings, and the proof necessary to sustain the action. The judgment in the one case is against them as individuals, and becomes a lien on their property ; in the other it is against them as a corporation, and only binds their corporate property. The corporation which the plaintiffs in error are said to represent, cannot be prosecuted in this state. The action was against them as individuals ; and in that view the proof was wholly insufficient to charge them.

Should the Court, however, think differently, and hold that there was a sufficient cause of action, then I should agree with Spencer, Senator, that the facts should have been tried by a jury ; and that for this purpose, the judgment should be reversed, without costs on either side ; and that the cause be sent to trial upon a venire.

For a total
reversal, 14 ;
for a qualified
reversal, 10.

The Court, on a division, being in favor of a total or general reversal, according to the result of the opinions delivered by SANFORD, Chancellor, COLDEN, Senator, and TALLMADGE, President ; 12 Senators concurring generally with the Chancellor ; and 9 Senators concurring generally with SPENCER, Senator, the following rule was thereupon entered with the Clerk.

" Counsel having been heard in this cause, and due deliberation being thereupon had, it is ORDERED, ADJUDGED and DECREED, that the judgment of the Supreme Court in this cause be reversed, with costs to be taxad. And it is further ordered that the record be remitted, &c."